IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISMAN MANUFACTURING, INC. | § § § | PLAINTIFF/ COUNTER-DEFENDANT |
| v. | § § | Civil No. 1:10CV482-HSO-JMR |
| ROWAN-CORNIL, INC., *doing business as* SUNBELT INDUSTRIAL TRUCKS, and JOHN DOES 1–10 | § § § § | DEFENDANT/ COUNTER-CLAIMANT |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

BEFORE THE COURT are the Motions for Partial Summary Judgment filed by Defendant/Counter-Claimant Rowan-Cornil, Inc. d/b/a Sunbelt Industrial Trucks ["Sunbelt"] [17], and by Plaintiff/Counter-Defendant Chrisman Manufacturing, Inc. ["Chrisman"] [19], on Sunbelt's Counterclaim against Chrisman, to the extent Sunbelt claims Chrisman violated Mississippi Code §§ 75-77-3, 75-77-5, 75-77-9, and 75-77-11, by failing to repurchase certain forklifts. Both Motions are fully briefed. After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that Sunbelt's and Chrisman's Motions [17], [19], should be denied.

I. BACKGROUND

Chrisman and a predecessor-in-interest of Sunbelt, Tailift USA, Inc. ["Tailift"], entered into a Distributorship Agreement [the "Agreement"] on November 8, 2002, for the sale of forklifts manufactured by Chrisman under the brand name

"Navigator." Stipulations of Fact [15], at p. 1. With Chrisman's consent, Tailift assigned its rights and obligations under the Agreement to Sunbelt shortly thereafter. *Id.* The Agreement permitted written amendments,[1] and the parties amended it twice. Stipulations of Fact [15], at p. 2. The first amendment was undated ["First Amendment"], and the second amendment occurred on September 24, 2007 ["Second Amendment"]. *Id.* By letter dated August 9, 2010, Chrisman gave notice to Sunbelt that it would not renew the Agreement effective November 8, 2010. *Id.* By letter dated November 9, 2010, Sunbelt made demand upon Chrisman for repurchase of 24 forklifts, which are identified in Exhibit "E" attached to the parties' Stipulations of Fact. *Id.* Chrisman has not repurchased any of the forklifts. *Id.*

Chrisman filed its Complaint [1] against Sunbelt on or about September 30, 2010. It filed an Amended Complaint [7] on December 15, 2010. Chrisman seeks certain declarations from the Court regarding the parties' rights and obligations under the Agreement. Chrisman also charges that Sunbelt breached the contract,

---

[1]Article VIII of the Agreement provides that

> [t]his Agreement sets forth the entire agreement and understanding between the parties relative to the subject matter contained herein and supersedes all other agreements, oral and written, heretofore made between the parties, except that is [sic] shall not relieve either party from making payments which may be owing under any agreement prior to the date hereof. Any amendment hereto must be in writing and signed by an authorized representative of Manufacturer and Distributor; provided, however, where a specific section of this Agreement provides that Manufacturer may amend or change such section or an exhibit to this Agreement in its sole discretion, then Manufacturer shall have the exclusive right to amend. Should any portion of this Agreement be held invalid, or unlawful, the remainder of the Agreement shall continue to be binding on both parties.

Agreement [15-1], at p. 15, attached as Ex. "A" to Stipulations of Fact [15].

breached its fiduciary duties, and/or breached the implied duty of good faith and fair dealing.  Am. Compl., at pp. 7–9.

Sunbelt filed an Answer [8] and Counterclaim [9] on December 23, 2010.  The Counterclaim alleges that Chrisman's purported nonrenewal was in fact a termination of the Agreement which did not comply with Mississippi law, because the notice of termination did not state all of the reasons constituting good cause for cancellation, as required by Mississippi Code § 75-77-2(1).  Counterclaim [9], at p. 2.  The Counterclaim asserts that the termination was also prohibited by Mississippi law because the reasons for termination were based upon market conditions, namely the change in the market, a condition beyond Sunbelt's control.  *Id.* (citing Miss. Code § 75-77-4(d)).  Sunbelt claims that Chrisman is obligated to repurchase the inventory of forklifts which were held by Sunbelt as of August 9, 2010.  *Id.*

The parties have now filed competing Motions for Partial Summary Judgment on Sunbelt's Counterclaim, but only to the extent Sunbelt claims that Chrisman is obligated to repurchase the forklifts, pursuant to Mississippi Code §§ 75-77-3, 75-77-5, 75-77-9, and 75-77-11.

## II. DISCUSSION

A.   Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure states, in relevant part, that

> [a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(a).  In applying this standard, the Court views evidence in the

light most favorable to the nonmovant. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997)).

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 976 (5th Cir. 1993). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Id.* at 324-25. To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because the Court has subject matter jurisdiction over this lawsuit by virtue of diversity of citizenship, *see* 28 U.S.C. § 1332, it must apply the substantive law of Mississippi in resolving the issues presented, *see Erie R.R. Company v. Tompkins*, 304 U.S. 64 (1938). Moreover, the Agreement provides that it "shall be governed by and construed under the laws of the State of Mississippi, United States of America." Agreement [15-1], at p. 15, attached as Ex. "A" to Stipulations of Fact [15].

B.   The Act

The parties agree that the contract is governed by Mississippi Code § 75-77-1, *et seq.* ["the Act"].  The parties disagree whether the repurchase provisions of the Act require Chrisman to repurchase any of the forklifts in question.  Mississippi Code § 75-77-3 provides that

> [w]henever any retailer enters into an agreement, evidenced by a written or oral contract, with a supplier wherein the retailer agrees to maintain an inventory of parts and to provide service and the contract is *terminated*, then the supplier shall repurchase the inventory as provided in this chapter.  The retailer may keep the inventory if he desires.  If the retailer has any outstanding debts to the supplier, then the repurchase amount may be setoff or credited to the retailer's account.

Miss. Code § 75-77-3 (emphasis added).

Mississippi Code § 75-77-5 states, in relevant part, that

> [t]he supplier shall repurchase that inventory previously purchased from him and held by the retailer on the *date of termination* of the contract. The supplier shall pay one hundred percent (100%) of the current net price of all new, unsold, undamaged and complete farm implements, machinery, utility and industrial equipment, outdoor power equipment and attachments, and ninety percent (90%) of the current net price on new, unused and undamaged and superseded repair parts. . . .  Farm implements, machinery, utility and industrial equipment and outdoor power equipment used in demonstrations, including equipment leased primarily for demonstration or lease, shall also be subject to repurchase under this law at its agreed depreciated value, provided such equipment is in new condition and has not been abused.

Miss. Code § 75-77-5 (emphasis added).

Mississippi Code § 75-77-9 sets forth certain exemptions to the foregoing rule, including that

> [t]he provisions of this chapter shall not require the repurchase from a retailer of:
> \* \* \*
> (c)   Any farm implements, machinery, utility and industrial equipment, outdoor power equipment and attachments which are not current

>     models or which are not in new, unused, undamaged, complete
>     condition, provided that the equipment used in demonstrations or
>     leased as provided in Section 75-77-5 shall be considered new and
>     unused;
>
> * * *
>
> (e) Any farm implements, machinery, utility and industrial equipment,
>     outdoor power equipment or attachments which were purchased
>     more than thirty-six (36) months prior to notice of termination of
>     the contract . . .

Miss. Code § 75-77-9.

Finally, according to Mississippi Code § 75-77-11,

> [i]f any supplier shall fail or refuse to repurchase and pay the retailer for
> any inventory covered under the provisions of this chapter within sixty
> (60) days after shipment of such inventory, he shall be civilly liable for one
> hundred percent (100%) of the current net price of the inventory, plus any
> freight charges paid by the retailer, the retailer's attorney's fees, court
> costs and interest on the current net price computed at the legal interest
> rate from the sixty-first day after date of shipment.

Miss. Code § 75-77-11.

The Court has not been directed to any Mississippi state court decisions interpreting these statutes. Where the Mississippi Supreme Court has not specifically addressed a particular question of state law, the Court is required to make an *Erie* guess as to what the Mississippi Supreme Court would likely decide. *Herrmann Holdings Ltd. v. Lucent Technologies, Inc.*, 302 F.3d 552, 558 (5th Cir. 2002). The "task is to 'attempt to predict state law, not to create or modify it.'" *Id.* (quoting *United Parcel Service v. Weben Indus., Inc.*, 794 F.2d 1005, 1008 (5th Cir. 1986)). *Erie* requires the Court to interpret the statute as would the highest court of the state. The Mississippi Supreme Court has explained that, "[i]f the words of a statute are clear and unambiguous, [it] applies the plain meaning of the statute and refrains from using principles of statutory construction." *Lawson v. Honeywell*

*Intern., Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011) (citations omitted).

The parties do not dispute that Chrisman is a "supplier," that Sunbelt is a "retailer," and that the forklifts in question are "industrial equipment," and hence "inventory," within the meaning of the Act. The Court agrees. *See* Miss. Code § 77-77-1(c)–(e); *see also, e.g., To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift America, Inc.*, No. 95-C-836, 1996 U.S. Dist. LEXIS 5340, *4–*5 (N.D. Ill. April 22, 1996) (holding that forklifts were "industrial equipment" and thus considered "inventory" under the Illinois Equipment Fair Dealership Law) (citing 815 ILCS 715/1–11 (1993)). Of relevance here are the words "terminated" and "termination" used in Mississippi Code §§ 75-77-3 and 75-77-5.

While other provisions of this chapter are worded more broadly, and employ terms such as "terminate," "cancel," and "fail to renew," *see* Miss. Code §§ 75-77-2, 65-77-4(d), the provisions which are the origin of any repurchase obligation, Mississippi Code §§ 75-77-3 and 75-77-5, only use the words "terminated" and "termination," Miss. Code §§ 75-77-3 and 75-77-5. A "nonrenewal" is distinct from a "termination," and the terms have different meanings. A "nonrenewal" is "[a] failure to renew something, such as a lease or an insurance policy." Black's Law Dictionary (8th ed. 1999). To "terminate" means "[t]o put an end to; bring to an end," or "[t]o end; to conclude." *Id.* By their plain language, sections 75-77-3 and 75-77-5 apply only to terminations, and not to nonrenewals. In short, no repurchase obligation is implicated where an agreement has not been renewed, as opposed to where one has been terminated. It follows that the gravamen of the parties' present dispute is whether the Agreement was simply not renewed, or was "terminated," which,

according to Sunbelt, would have triggered the foregoing repurchase provisions.

C.     <u>The Parties' Agreement</u>

At the heart of this controversy is the question of when the Agreement was to expire. Chrisman maintains that the Agreement's final term would have expired on November 8, 2010, such that it simply decided not to renew it. Sunbelt asserts that it would not have expired until December 31, 2010, making Chrisman's decision to end the distributorship as of November 8, 2010, a "termination," as opposed to a "nonrenewal." This presents a question of contract interpretation.

Mississippi courts employ a three-tiered approach to contract interpretation. *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 284 (Miss. 2005) (citation omitted). The Court must apply the "four corners" test, wherein it looks to the language the parties used in expressing their agreement. *Id.* (citation omitted). If the Court is unable to ascertain a clear understanding of the parties' intent, it may apply the "discretionary 'canons' of contract construction." *Id.* These include the principles that vague or ambiguous contract terms should be construed more strongly against the party who drafted the instrument, and that specific language controls over general, inconsistent language. *Harris v. Harris*, 988 So. 2d 376, 379 (Miss. 2008) (citations omitted); *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352–53 (Miss. 1990) (citations omitted). The goal of the canons is to supply a court with an objective basis for inferring the parties' intent. *Perkins*, 558 So. 2d at 352–53. "[I]f the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." *Id.* Whether a contract is ambiguous is a question of law for the Court. *Harris*, 988 So. 2d at 378.

Here, the Court cannot ascertain the duration of the final term of the contract from the four corners of the Agreement and its amendments. The parties entered into the Agreement on November 8, 2002. Agreement [15-1], at p. 1, attached as Ex. "A" to Stipulations of Fact [15]. It remained "in effect for the initial term of two years, unless terminated earlier under the provisions [thereof]." *Id.*, at p. 10. Thus, the initial term would have ended on November 8, 2004. The Agreement next reads that:

> [p]rovided Distributor is not in default under this Agreement and has satisfied the minimum requirements set forth in Section 2.0 for the then expiring current term of this Agreement, Manufacturer shall renew this Agreement for additional successive two years terms (subject to termination during any such renewal term as provided herein), unless Distributor gives written notice at least 60 days prior to the expiration of the then current term that it will not renew this Agreement. Upon any such renewal, the terms of this Agreement shall continue, except as expressly set forth herein.

*Id.*[2] Section 2.0, Minimum Requirements, states that

> Distributor hereby agrees that in order to maintain Distributor's exclusive appointment within the APR, Distributor must purchase from Manufacturer the minimum number of units of Forklifts set forth on Schedule A for each of the periods set forth on Schedule A. If, at the end of any period set forth on Schedule A, Distributor has not purchased the minimum number of units of Forklifts required to be purchased as set forth on Schedule A for such period (and each prior period), Manufacturer

---

[2]In sections 4.1 and 4.2, the Agreement provides that it may be terminated by the Manufacturer or Distributor under various circumstances, upon written notice to the other party. Section 4.3 states that "[i]n the event of termination of this Agreement, Manufacturer, in its sole discretion, shall repurchase from Distributor all or any unsold Products held by Distributor which Manufacturer determines are new, unused, in good condition and resalable . . . ." Agreement [15-1], at p. 11–12, attached as Ex. "A" to Stipulations of Fact [15]. However, Mississippi Code § 75-77-19 provides that, "[e]xcept as otherwise provided in Section 75-77-6, the provisions of this chapter shall not be waivable in any contract, and any such attempted waiver shall be null and void." Section 75-77-6 applies to warranty claims submitted by a retailer, which is not at issue in this case.

> may, upon written notice to Distributor, convert Distributor's distributorship from an exclusive appointment to a nonexclusive appointment in the APR. Further, failure to purchase the minimum number of units of Forklifts by the end of the first year of the term of this Agreement shall be grounds for nonrenewal of this Agreement by Manufacturer, at Manufacturer's option. In the event this Agreement is renewed by Manufacturer, it shall be renewed for a subsequent one year period and Distributor's minimum purchase requirements for such renewal period shall be determined by Manufacturer and shall be set forth on a new Schedule A. Manufacturer shall make such determination on the basis of such reasonable criteria as Manufacturer may from time to time determine to be pertinent, including, but not by way of limitation, fair and reasonable sales objectives which may be established from time to time by Manufacturer for Distributor; development of Distributor's sales performance over a reasonable period of time; and particular conditions in the APR, if any, directly affecting sales performance and potential sales performance. Manufacturer shall have the same rights as set forth above during any renewal period to terminate the exclusivity of Distributor's distributorship or not to renew the Agreement. The Agreement may continue to be renewed at Manufacturer's option for subsequent one year renewal periods upon the same conditions as set forth in this Section 2.0 for the initial renewal period.

*Id.* at p. 3. The original Schedule A stated that:

> 2)   The minimum purchase requirements referenced in Section 2.0 of the Agreement for the first year are as follows:
>       Total Target Units      150 Units in Two Years.

*Id.* at p. 17.

The subsequent, undated First Amendment provided that, "[e]xcept as specifically changed and modified specifically in this Amendment, the Agreement remains in full force and effect from this day." First Amend., at p. 1, attached as Ex. "B" to Stipulations of Fact [15]. The First Amendment attached a copy of the Agreement and provided that the Agreement was incorporated by reference. *Id.* It contained a new Schedule A, whereby "[t]he minimum purchase requirements referenced in Section 2.0 of the Agreement for the first two years from January 1, 2007 shall be 200 forklifts per year." *Id.* at p. 5.

The Second Amendment, dated September 24, 2007, "further amend[s] the Agreement and [First] Amendment." Second Amendment, at p. 1, attached as Ex. "C" to Stipulations of Fact [15]. Schedule A was thus amended to read:

> The minimum purchase requirements referenced in Section 2.0 of the Agreement and Amendment for the first year from January 1, 2007 until December 31, 2007 shall be 113 forklifts. The minimum purchase referenced in Section 2.0 of the Agreement and Amendment for the period January 1, 2008 through December 31, 2008 shall be 200 forklifts. Chrisman agrees to deliver the forklifts to Sunbelt in order to meet these purchase requirements as ordered by Sunbelt.

*Id.*

While it appears that the original Agreement contemplated a final term expiring on November 8, 2010, Sunbelt's position is that the Amendments arguably changed this term, making it due to expire on December 31, 2010. The Court finds both interpretations reasonable, thus rendering the contract ambiguous in this respect. Utilization of the discretionary canons of contract construction does not shed any further light on the parties' intent. It is not clear from the record which party drafted the Agreement or the two Amendments. In light of the ambiguity as to the expiration of the term of the contract, a question of fact is presented for resolution at trial. *Id.* Summary judgment in either party's favor on Sunbelt's Counterclaim under Mississippi Code §§ 75-77-3, 75-77-5, 75-77-9, and 75-77-11 would therefore be inappropriate.

D.  Applicable Statutory Exemptions

Chrisman argues that, even if this was a "termination," it is not required to repurchase any of the forklifts under the relevant statutes, such that summary judgment in its favor is nevertheless appropriate. Pl.'s Mem. Brief [20] in Supp. of

its Mot. for Summ. J., at pp. 7–9.  Chrisman maintains that none of the identified forklifts are "current models," exempting them from any repurchase requirement. *Id.* (citing Miss. Code § 75-77-9(c)).  Sunbelt responds that Chrisman continues to market and sell the same model forklifts, such that all of the forklifts are "current models" as defined by the Act.  Def.'s Resp. [21], at pp. 1–2.

Mississippi Code § 75-77-9 exempts industrial equipment which are "not current models" from the repurchase requirements of the Act.  The Act defines a "current model" as "a model listed in the wholesaler's, manufacturer's or distributor's current sales manual or any supplements thereto."  Miss. Code § 75-77-1(a).  On this point, the Court has been presented with affidavit testimony from Mr. Warren Cornil on behalf of Sunbelt, and from Mr. Mark Chrisman on behalf of Chrisman.

Mr. Chrisman contends that since "mid-2010," Chrisman has manufactured a new model Navigator forklift which differs from the forklifts identified in Sunbelt's inventory in several respects.  Aff. of Mark Chrisman, at p. 4, attached as Ex. "B" to Pl.'s Mot. for Summ. J. [19].  He asserts that "[s]ince mid-2010 (including prior to Chrisman's notice of non-renewal by letter dated August 9, 2010), each and every Navigator forklift manufactured by Chrisman incorporated the modifications . . . ." *Id.*  In support of this position, Mr. Chrisman refers to sales presentations Chrisman made in 2010 for its "new 2010 model Navigator forklift." *Id.* at pp. 4–5.

On the other hand, Mr. Cornil attests that Chrisman is still marketing the two models of forklifts which Sunbelt is currently holding, the RT-4000 and the RT-5000, through Chrisman's sales brochure, and that the brochure "has remained largely unchanged during Sunbelt's distributorship of Chrisman's forklifts."  Second

Aff. of Warren Cornil, at p. 2, attached as Ex. "1" to Def.'s Resp. [21].  Mr. Cornil states that "Chrisman made minor modifications to each of its model trucks several times throughout the life of the Agreement, but Chrisman did not change the sales brochure it used to sell and market forklifts."  *Id.*  Mr. Cornil attaches a copy of the sales brochure to his Affidavit and states that this is "the exact same as the brochure Sunbelt distributed to potential purchasers when the Agreement was in place," and that it is identical to the one available on Chrisman's website as of the date of his Affidavit, which was April 29, 2011.  *Id.*

      Considering the record as a whole, the Court is of the opinion that there remain genuine disputes of material fact as to whether the forklifts in question qualify as "current models."  Even assuming that there was a "termination" of the contract, summary judgment in Chrisman's favor is nevertheless inappropriate.

      To the extent that Chrisman makes additional arguments with respect to some of the forklifts not qualifying as "new" or "unused," which would also exempt them from the repurchase under Mississippi Code § 75-77-9, the Court finds genuine disputes of material fact remain as to those particular forklifts.  The Act provides an exception to the "new, unused, undamaged, complete condition" exemption for "equipment used in demonstrations or leased as provided in Section 75-77-5."  Miss. Code § 75-77-9(c).  According to this provision, such equipment shall be considered "new and unused."  *Id.*  Whether any of the forklifts at issue were new, unused, or demonstration models presents an inherently factual determination, precluding summary judgment.

      Though it has not raised this issue in its Motion [17], Sunbelt notes in its

Response [21] to Chrisman's Motion [19] that its Counterclaim includes an allegation that Chrisman violated Mississippi Code § 75-77-2 by not stating all of the reasons constituting good cause for its actions in its August 9, 2010, letter to Sunbelt. Sunbelt's Complaint also asserts that any nonrenewal or termination was prohibited by Mississippi law because Chrisman's reasons for cancelling the Agreement were based upon market conditions, namely the change in the market, which was beyond Sunbelt's control. Counterclaim [9], at p. 2 (citing Miss. Code § 75-77-4(d)).[3] These portions of Sunbelt's Counterclaim, however, are not currently before the Court, and the Court declines to consider whether summary judgment is appropriate on these or any other claims which were not the subject of the parties' Motions.

### III.  CONCLUSION

Because there are genuine disputes of material fact requiring resolution at trial, summary judgment in either party's favor would be inappropriate.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Defendant/Counter-Claimant Rowan-Cornil, Inc. d/b/a Sunbelt Industrial Trucks' Motion for Partial Summary Judgment [17], and Plaintiff/Counter-Defendant Chrisman Manufacturing, Inc.'s, Motion for Partial Summary Judgment [19] are both **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the parties are directed to contact the Magistrate Judge within seven (7) calendar days of the entry

---

[3]In addition to the repurchase provisions cited above, the Act provides for a private right of action for a retailer against any supplier found violating any of sections 75-77-1 through 75-77-15, which encompass the statutory sections relied upon by Sunbelt. Miss. Code § 75-77-16.

of this Order to schedule an additional Case Management Conference in order to set this case for trial.

      **SO ORDERED AND ADJUDGED**, this the 19th day of March, 2012.

                                  *s/ Halil Suleyman Ozerden*
                                  HALIL SULEYMAN OZERDEN
                                  UNITED STATES DISTRICT JUDGE